David MITCHELL et al., Appellants,

v.

Gary DOOLITTLE, by His Father and Next Friend, Robert L. Doolittle, Appellee.

Court of Appeals of Kentucky.

June 28, 1968.

Fred Faulkner, Jr., Campbellsville, Robert B. Hensley, Elizabethtown, for appellants.

Clyde Williams, Jr., Campbellsville, Edwin O. Davis, Davis & Mahan, Louisville, for appellee.

CULLEN, Commissioner.

On a cloudy, gloomy afternoon in December Arnel Baker was operating David Mitchell's dump truck along blacktopped U. S. Highway No. 68 when he encountered a funeral procession coming from the other direction. Somehow conceiving that such would be an act of courtesy, Baker undertook to bring his truck to a stop in the middle of his lane of traffic. Gary Doolittle, driving a small sports car and approaching from the rear of the truck, over the crest of a rise and around a curve, was unable to stop his car and after skidding 117 feet his car struck the rear of the truck with a moderate impact, damaging the car and causing personal injuries to Doolittle. Doolittle could not pass the truck on the left because the left side of the road was occupied by the funeral procession, and he could not pass on the right because there was a high bank close to the road on that side. At the time of the impact the truck either had stopped or was about to come to a stop.

Doolittle sued Baker and Mitchell for damages and the jury awarded him $6,250, for which judgment was entered. Baker and Mitchell have appealed, asserting as their sole ground of error that Doolittle was contributorily negligent as a matter of law. (They concede their own negligence.)

The appellants' argument is predicated entirely upon their contention that the testimony of one of Doolittle's own expert witnesses showed that he had an unobstructed view of the truck for a distance of 517 feet back from the point of impact.

As we read the testimony it does not plainly bear the interpretation the appellants seek to give it. In the first place, it is not at all clear whether the 517-foot measurement, which commenced at a mailbox back from the crest of the hill in the direction from which Doolittle came, stopped at the point of the accident or extended beyond that point to the foot of the hill (to which latter place visibility might have been better). At one place the testimony seems to say that the distance from the mailbox to the point of the accident was only 400 feet. In the second place, the testimony is that at the mailbox a person seated in a car of the size of Doolittle's could see *so much* of an object at the point of accident *as extended more than 5 feet 10 inches in height*. So only the top few inches of the truck would have been visible from the site of the mailbox. In the third place, the testimony gives no significance to the fact that the truck was still *moving* when Doolittle was at the mailbox and it does not indicate what visibility Doolittle would have had of the truck when it had not yet reached the point where it stopped. And in the fourth place, the testimony makes no allowance for the time required for Doolittle to become aware that the truck was *ceasing to move*.

Evidence in the case, other than the testimony above discussed, indicated that the truck was not visible, at the point of collision, to a motorist approaching from the rear, until his vehicle reached the crest of the hill which was only some 162 feet from the point of collision. Doolittle said he did not see the truck until then. Several persons who were in the funeral procession testified that they did not see Doolittle's car until it reached the crest of the hill.

■ Since the appellants rest their appeal solely upon the claim of a 517-foot

visibility, and since that claim is not clearly supported, their appeal must fail.

We may say that while a motorist is required to exercise extra care when his view is obstructed by some *unusual* condition, such as smoke, fog, glaring lights, etc., we do not conceive the law to be that he must be prepared for the possibility of confronting an illegally stopped car beyond every curve and past the crest of every hill. On the contrary, he is entitled to assume that the highway is reasonably safe for ordinary travel and he does not have to anticipate the presence of an extraordinary hazard such as an illegally stopped vehicle. See Duncan v. Wiseman Baking Company, Ky., 357 S.W. 2d 694; Adams Construction Company v. Short, Ky., 324 S.W.2d 118; Crawford Transport Company v. Wireman, Ky., 280 S.W.2d 163.

We are aware that in Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S.W.2d 1066, and in Freeman v. W. T. Sistrunk & Co., 312 Ky. 438, 227 S.W.2d 979, a different rule is stated, but we have not considered that rule to be sound. See Ashton v. Roop, Ky., 244 S.W.2d 727, DeBuyser v. Walden, Ky., 255 S.W.2d 616, and Duncan v. Wiseman Baking Company, Ky., 357 S.W.2d 694.

The judgment is affirmed.

All concur except OSBORNE, J., who dissents.

OSBORNE, Judge (dissenting).

This case involves what is referred to in common parlance as a rear-end collision which happened in broad daylight. There is a question in evidence as to whether visibility was clear in the direction of the approaching vehicle for 162 feet or 517 feet. As I view the matter, this is of no significance. If there were a hill, appellee had the duty of not topping it at a speed that would be excessive when taking into consideration his forward visibility. I am concerned that the court refuses to recognize the validity of a long line of cases dealing with this exact situation. In Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S.W.2d 1066 we held a motorist negligent as a matter of law when he was rounding a sharp curve at night blinded by lights of an oncoming vehicle and struck a parked truck in the rear.

There we said:

"* * * he continued along without taking any precaution to avoid hitting what might be in his path, when, had he taken the precaution of slackening his speed and having his car under such control as to be able by the exercise of ordinary care to avoid hitting what might be ahead of him, he could have easily avoided this collision. * * * Under the circumstances of being blinded by the Barton lights and not knowing what was just around the curve, Gamble was under the duty of at least taking some of the precautions outlined. See Downing and City of Providence Cases [Downing v. Baucom's Adm'x, 216 Ky. 108, 287 S.W. 362; City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022]. It is admitted he did nothing. Hence there was no question for the court to submit to the jury on this matter of contributory negligence, and it should have peremptorily instructed the jury to find for the appellant."

In Dixie Ice Cream Co. v. Ravenna Grocery Co., 306 Ky. 182, 206 S.W.2d 824, where the driver of one truck struck the rear end of another which had just pulled onto the highway 600 feet ahead, in holding the driver of the striking vehicle negligent as a matter of law, we said:

"Baker testified that he was traveling about 35 miles per hour, but he had no speedometer on his truck and his testimony on that issue was more or less a surmise. The testimony as a whole shows that he could have seen the efforts of West to cross the highway on to its south side for at least 600 feet and if

in that process his view was obstructed, it was his duty to slow down until the obstruction in front of him were corrected and to thereby prevent the collision."

In Freeman v. W. T. Sistrunk & Co., 312 Ky. 438, 227 S.W.2d 979, the truck was stopped at the side of the highway at night because the gas tank had run empty, the plaintiff struck it from the rear. In this case there was only 150 feet of unobstructed road and we said:

"* * * she assumed the truck was moving and continued at the same rate of speed she was traveling which, according to her own testimony, was as much as forty miles an hour, and slowed down too ·late to avoid the collision. She took no proper precaution to avoid hitting the truck which, whether moving or standing, was in her path. Under these circumstances we think Mrs. Freeman's own negligence was the proximate cause of her unfortunate accident. Lexington-Hazard Express Co. v. Umberger, supra."

In Banner Transfer Company v. Morse, Ky., 274 S.W.2d 380, we held that reasonable minds could not differ where an automobile driver struck the rear of a parked truck in broad daylight. We said the automobile driver is guilty of negligence as a matter of law. Here we said:

"The question of contributory negligence ordinarily should be submitted to the jury.· Hardware Mutual Casualty Co. v. Union Transfer & Storage Co., 205 Ky. 651, 266 S.W. 362; Padgett v. Brangan, 228 Ky. 440, 15 S.W.2d 277, cited above. But where reasonable minded men could arrive at only one conclusion from the testimony, the question becomes one of law for the court. Acres v. Hall's Adm'r, Ky., 253 S.W.2d 373. It seems to us the testimony in this case points unerringly to the fact that plaintiff either was not keeping a proper lookout or did not have her car under proper control. The rule in this jurisdiction is that an injured party may not recover damages if his negligence is a contributing factor in causing the injury. It is not necessary that plaintiff's negligence be the sole cause of the injury; it is sufficient if it contributes to the extent that the injury would not have occurred but for such negligence. Saddler v. Parham, Ky., 249 S.W.2d 945; McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933. We are unable to escape the conclusion that plaintiff was guilty of contributory negligence as a matter of law and that the trial court should have directed a verdict for the defendant. For a case very similar on the facts, see Turpin v. Scrivner, 297 Ky. 365, 178 S.W.2d 971."

As late as 1955 in Tate v. Crockett, Ky., 277 S.W.2d 22, we were adhering to the same rule. In that case the truck was stopped upon the highway at night. In holding the driver of the striking automobile negligent as a matter of law, we said:

"From the foregoing resume of the evidence, we think it is beyond question that Tate was negligent as a matter of law in failing to keep a proper lookout. It is undisputed that the rear of the truck was well lighted, and that there were at least two flares burning on or near the highway west of the truck."

How we can today decide a case on all fours with those above cited completely contrary to the rule there set out and never recognize their validity is beyond me. Proper appellate procedure demands they be distinguished, overruled or followed, but in no event ignored.[1]

For the foregoing reasons, I respectfully dissent.

1. After this dissent was circulated the court modified the majority opinion to include the cases cited in this dissent. However, the principle is in no manner changed as the opinion does nothing more than attempt to brush them off.